in Tech Systems, 2016-2304. Ms. Murdoch-Pack? Yes, Your Honor. May it please the Court. The trial court's comments from the bench, which explicitly disclaimed a ruling, were an insufficient basis upon which to find Delew a prevailing party under the Equal Access for Justice Act. This decision should be reversed for three main reasons. First, the Army's corrective action was voluntary, and the trial court found the case moot when it dismissed the case several weeks following oral argument. But doesn't it make sense that the trial judge knew what she did? Knew whether what she had done was to indicate what action she was taking and whether it changed the positions of the parties? Well, certainly, Your Honor, the trial court knew that at the time of oral argument and in her subsequent written decision mooting the case that she found the Army's conduct to be voluntary. And in fact, in Appendix 173 to 176 in her dismissal order, she explained that the Army's voluntary conduct demonstrated there was no chance the activity would recur and found the case to be moot. And the trial court could have at any point issued a ruling during oral argument or subsequent to oral argument prior to corrective action, but the trial court elected not to do so. And the trial court, in terms of some of her comments on the record regarding voluntariness, explained that the scope and the breadth of any corrective action was up to the Army, explained that if the Army took corrective action. She said the court made clear that the Army should take corrective action. Defendant understood how the court intended to rule? Certainly, the trial court did make those comments, and the trial court made clear her belief that corrective action should be taken. But the important distinction between this case and the other cases in which prevailing party status was found is the trial court issued no order, orally or otherwise. Instead, it issued its recommendations and its beliefs. Well, let's just ask this. Could you appeal that statement of intention? We could not, Your Honor. There is no way to appeal that statement, and that is why DeLieu could not be a prevailing party. As Your Honor indicated, the comments from the bench ordered no relief to DeLieu. And under Buckhannon in this court's precedent, that is an insufficient basis upon which to award fees. The record reflects that the Army understood what the judge was saying. The judge was saying, this is how I'm going to rule. This is where we're headed. You may want to go tell your client. Correct, Your Honor. The judge certainly expressed her beliefs. And was there, I imagine there was a court reporter there, right, taking all this down? Correct, Your Honor. The transcript is in the appendix. So let's say if, after making all those statements, then the judge is defiant on behalf of the Army, and that would be on appeal. Wouldn't that be reversible error? I mean, wouldn't we look at all those statements that are made and her opinion, or rather the statements and her conclusions, her legal conclusions, and say they're not consistent with the opinion? If I understand Your Honor's question, whether if the trial court immediately following argument stated that it was ruling on behalf of the Army, whether that would be reversible error? Let's say everything is the same as the cases, except her decision would find on behalf of the Army. Yes. And then they come up and appeal. If the decision is with respect to the prevailing party, then there was no order entered. Forget the fees. I'm just talking about on the merits. On the merits, if everything was the same and the Army took corrective action already? No. Let's say everything's the same, except that the judge comes back and rules in favor of the Army. Prior to the corrective action, immediately following argument? After the case is over. She rules. Her decision, at the end of the day, favors the Army. If the trial court found in favor of the Army based on the comments and relied only on the comments at oral argument, that could be reversible error. I suppose. I don't... Really? So a trial court says... I guess your speculation is the trial court writes a decision and a judgment and says, based on my comments... Yes, Your Honor. If the decision was solely based on the comments at oral argument and there was no further... And there's no analysis in that opinion. Correct. But supposing there is analysis in the opinion, which rejects the... Says, I was thinking this, but I've just changed my mind. Then that would not be reversible error. And the trial court does often change its mind after oral argument. That is one of the reasons why this court has found that a court's written opinion should govern versus statements made at oral argument. And if in the case that... Have you ever filed a post-argument brief? Certainly after trial, I have, yes, Your Honor. And in this case, the trial court offered the turn upon. And that briefing was offered early in the proceedings and was echoed subsequently in comments by the trial court. Now, the trial court's ruling is contrary... The third reason that the trial court's ruling should be reversed is it's contrary to Buchanan and this court's precedent as... Counselor, the trial court stated a reason. The trial court said that there's good cause to extend the holding of universal fidelity. And says that case applies to here. And then she outlines the matter was fully briefed at the time the statements were made. The court arrived at legal conclusions after considering the merits of the parties. And she made the parties aware of these legal conclusions. She says, on this basis, this is like universal fidelity. And if I look at that and the standard of reviews and abuse of discretion, then how can I find that she's wrong? How can I say that she abused her discretion in this regard? Well, first, Your Honor, the standard of review here is de novo. And the decision of whether a party prevails... That's why it's de novo? Because this court's precedent in Brickwood, Rice, Chapman, and all the other circuits state that the decision of a prevailing party is a question of law, which is entitled to no deference. And the trial court here, its reliance on universal fidelity, which is a non-binding decision, the trial court's decision on the aegyphes ignored largely this court's in Brickwood and... Would we be reviewing our precedent and case law along the lines of whether there's sufficient judicial imprimatur in this case? This court would be ruling whether there is sufficient judicial imprimatur, yes, which is a legal question, which this court in, again, Brickwood, Rice, and Chapman, amongst others, found was a question to be reviewed de novo. The... Although Deleux urges this court adopt the question of deference and give deference to the trial courts as it characterizes the legal conclusions and findings of fact, the trial court made clear that it issued no decision which was finalizing in any manner its preliminary findings or conclusions. And the import, Your Honors, as this court has discussed extensively in its prior decisions is that there must be an actual court-affected change in legal relationship and there was no court-affected change here. Moreover, the army's conduct was voluntary, as this court found in Chapman, for example, even though in that case the agency had to go back and make changes to a corrective action upon the trial court's comments, the action was considered no less voluntary. Here, the army unilaterally took action without any direction from the court to do so and the trial court's decision on aegyphes should be reversed. So a troubling aspect of this, if we follow your reasoning, is that government agencies can wait and not take any action until you go through a trial process, there's testimony, there's evidence that's submitted, the court makes legal conclusions, and then depending on which way the winds are blowing, you can go back, take corrective action, and say there's no prevailing party, there's no aegyphes applicable. It seems to me that defeats the purposes of the aegyphs statute and gets into a point where it makes it more difficult to obtain legal help, which in my book has implications for access to justice. Two responses to that, your honor. First, the award of fees under AEGYPH must be strictly statutorily construed, and the Supreme Court and Buchanan found that the government, in waiving its sovereign immunity to award fees, there must be certain formalistic, if you wish to approach it that way, there must be a manner in which a party can determine if fees are awarded, and that is a court-ordered change in legal relationship. Was the trial court prohibited in any fashion by the government's action from issuing findings of fact, conclusions of law, and a judgment? Prior to or after the corrective action? After the corrective action. Had the trial court issued some sort of findings and conclusions, that would have been the nature of an advisory opinion, which the trial court explicitly stated it would not issue. In that instance, because the army had already acted, there would have been no merits findings necessary because the case was moot, as the trial court found. And to go back to your other point, Judge Reina, if I recall correctly, that you seem to be asking if, in essence, is this fair? Again, because the waiver of sovereign immunity must be... No, well, you can see it that way. I'm just asking if it's fair. At the end of the day, I'm looking whether the court erred or not, not whether it was fair. The court certainly erred here. The trial court's decision should be reversed, and the trial court's comments from the bench could be considered analogous to, for instance, a trial court urging that the parties engage in settlement discussions and informing the defendant, perhaps, that it considered its position to be X, Y, Z. Now, had this not been a bid protest and the army could have engaged in settlement discussions, then had the party settled, there would have been no time, unless your honors have more questions for me at this point. We will do that for you. Mr. Lasky. Kelfer, you have a hard road to hoe here, don't you? I think you do. Well, I would disagree with you, your honor. I would say... What is judicially premature in this case? It's a very poorly defined term, I think, overall by the courts. However, particularly by the Supreme Court, they just said judicial impreture. It didn't say a heck of a lot more. However, the universal fidelity case and the Palmetto, there are very few cases... I'm thinking of ruling against you. Can you go to the Supreme Court on a writ of certiorari? I apologize, your honor. I missed the first part. I said I'm thinking of ruling against you. Can you now go to the Supreme Court on a writ of certiorari? Um, I don't know the rules, your honor, of that, unfortunately. But I would say no, until there was you personally saying that would not be enough. But in this case, there's a really big difference. In this case, the court did... There's two main factors here, according to the test in Palmetto, which we think is essentially the test that the court applied in this case, and has adopted the same test that was applied in universal fidelity, which the government has never argued in this case was wrongly decided. And that is that there's a resolution of the merits in the case, and that the courts, the government's corrective action was not truly voluntary because it was taken after the resolution of the merits. And in this case, the court did enter legal conclusions... Where? In the oral argument transcript, your honor. No. Where did it issue findings of fact and conclusions of law? You say at page 32 of your brief, it issued findings and conclusions. Where? The conclusions that it issued were, it said that the award to TSI was, quote, contrary to law, arbitrary, capricious, and irrational. Where is that? Where is that document? That's the trial court's transcript, your honor. That's where that is entered. It's in the Why can't you argue that that's sufficient judicial imprimatur? That's what I am arguing, your honor, that those statements at oral argument are sufficient judicial imprimatur. I mean, not just the statements alone, but the fact that a court reporter took them down and they exist in the record. And that's more what I mean, your honor. What I mean... Did they exist as an entry of judgment by a clerk? Your honor, there is not a requirement, according to this court, that there be an entry of judgment. In the Rice case, this court said it's sufficient if there is an or equivalent. And according to the Palmetto case, which I know is not binding on this court, and the University of Philadelphia case, which again, not binding, but has not been disputed, there was no final judgment entered in either of those cases. Your honor mentioned that this couldn't be appealed immediately, but the partial motion for summary judgment granting in Palmetto could be no more appealed immediately than this issue, nor could the universal fidelity interim opinion have been immediately appealed. There would have needed to be a final judgment. But in both those cases, in explaining, addressing Buckhannon, and in the universal fidelity addressing all the Federal Circuit's precedents on this case... You cite Justice Scalia a lot from Buckhannon. From Parham. Oh, sorry, you're right, correct, your honor, correct. But you don't mention that you're relying on a concurrence, as opposed to a majority opinion. What authority do you have for that? The majority said, in that case, in Buckhannon, it recognized that even though Parham was under the catalyst theory, it said Parham was still rightly decided, even under this Buckhannon threshold test. And they didn't go beyond that, whereas Scalia, Justice Scalia actually went and explained what that meant, what the elements that they were looking for in Parham that still made it good law. And in Parham, it's a really unique case, because in that case, the corrective action was taken before the resolution. And here's my question, I'm sorry. Sorry. What authority do you have for relying on the concurrence, as opposed to the majority? I'm simply saying that the concurrence is further explaining the reasoning of the majority opinion. But ultimately, the Parham case, the Parham interpretation is not the main, it's not really the main point of argument, which is really just a secondary argument. We're saying that if the court were to find that the action of the government was actually voluntary, that it would still not matter, because in the Parham case, the corrective action was taken before the case was even filed. And nevertheless, the Eighth Circuit said that there was a violation of the Civil Rights Act, and then remanded with the ability to enforce that in the future, if it ever became necessary. So, the government emphasizes the idea that the merits conclusion needs to be immediately enforceable for there to be judicial infringement. But in Palmetto, in Parham, in Universal Fidelity, none of those were immediately enforceable. They were enforceable by future court action, if necessary. Now, the government mentions the standard of review, and I just want to discuss that real briefly. You agree that as a waiver of sovereign immunity, the statute is strictly construed. Yes, Your Honor. But there's no construction that Buckhannon or any of the decisions by this court have made that construes this statute in a manner where the court statements at oral argument can't be considered judicial infringement. The court statements were made, they're basically rulings from the bench at oral argument on the record. As a trial judge, I often used to think out loud, dialoguing with counsel. Was I bound by those thoughts? You would be no more bound than a partial motion for summary judgment, which is ultimately you, until a final judgment is entered, is not a binding judgment. Your Honor, so I would be bound to that extent. I apologize, Your Honor. I'd be bound to the extent of a partial motion for summary judgment. I believe it would be analogous, Your Honor. But gee, isn't that pretty poor policy? I believe in this case, the court was very clear that she was not simply saying, this is how I'm leaning, this is how I feel. And that's the difference between the NRCC case that was decided by the First Circuit, which is actually the only case that I'm aware of dealing with oral statements. And in fact, after making those comments, could she have changed her mind? She could have changed her mind just as much as a judge could have granted reconsideration on a partial motion for summary judgment. But she had resolved the merits of the case in her statements, and she was very clear about that. Not only did she state that the decisions were contrary to law, arbitrary, capricious, irrational, but she said that it seems an absolute departure of reality. There's no question in my mind. Those are the terms she was using. She said there were ample grounds to sustain the protest. And she didn't merely say, it wasn't just a suggestion that she would require corrective action. She said, quote, corrective action should be taken in this case. Discussions have got to be reopened. And corrective action is certainly necessary in this case. And then at the close of the oral argument, after this discussion about the additional briefing, which I'm happy to discuss, she said her views on the case were definite. And that she'd even prepared a draft decision, which not only had those views in it that she had stated at oral argument, but a draft, which that's what she referred to it. She had drafted it. Right. It's a draft. Correct. I don't think that is the fact that she had or haven't prepared the draft decision is critical to this case. Because what I'm trying to say is the judicial imperature is the state. What is critical is it's a draft. She refers to it as a draft decision. Well, I think that doesn't discount, Your Honor, respectfully, I think it doesn't discount the fact that her statements regarding the conclusions on the merit were definite at oral argument. The fact she hadn't finalized the written. She could have entered an oral judgment. She could have said, here's my decision. Read it into the record. That's a judgment, right? I directed the entry of judgment. I don't know if that, I assume she could have. But part of the reason she was trying, essentially, to do the government a favor and give them an opportunity to take the corrective action she was going to require they take without her having to issue a written opinion. And she specifically said that if she had to write a written opinion, it could be potentially embarrassing to the government, given the fact there were some discovery issues in the GAO process that came up. Now, the government says that the door was open to further briefing. And the court did say, she never ruled. There was a request for some additional briefing. The court never ruled on it. But the court said, if you want additional briefing, you need to make it in the joint status report request. And in that report, so the hearing was on October 22nd. So to the, first of all, that additional briefing entailed one document. It was about one document. And that document did not actually, had no actual impact on the ultimate resolution of merits that the court discussed in the substantial, in the EGA opinion regarding the government having a substantial basis for its argument in that section. But more importantly, even if the potential for additional briefing hadn't been foreclosed at the hearing, it was definitely foreclosed on November 9th, when the government didn't request additional briefing in its joint status report. So by that point, there's no more additional briefing for sure. And the government hasn't taken corrective action at that point. The government doesn't take corrective action. The fact that she's offering the opportunity for additional briefing indicates that she's changed her mind. If that's the case, Your Honor, and I would respectfully disagree because after she said that she was, that the additional briefing had been discussed, she later said at the hearing that her views on the case were, quote, definite, and that corrective action was certainly necessary. So even, but even if that's the case, even if she could change her mind based on additional briefing, the additional briefing was foreclosed on November 9th. And no corrective action had been taken at that point. So at that point, whatever uncertainty there was as to the resolution of the merits was gone. It was resolved at that point because there was no more additional briefing. And then on, the government didn't take corrective action, I think, until the 12th or 13th of November, three days later. And the case wasn't dismissed for several weeks after that. So the government took corrective action instead of filing additional briefing. So what? The court had the opportunity to change its mind. It indicated it. I don't, the court always has. Could the court have changed its mind on November 15th? At that point, I think the case, at that point, the government had already taken corrective action. So I don't, I think that the case was effectively mooted by November 15th. So there was no more opportunity, the government argued that the court couldn't issue a decision at that point, couldn't issue a judgment in our favor at that point. So no, I don't think there was any opportunity anymore for the judge to rule. And I would just point out that in Buckhannon, one of the policy aspects that Buckhannon discussed in their decision is that they didn't anticipate cases where there would be an opportunity in an equitable relief case to essentially void fees by 11th hour corrective action after resolution. The merits. They said that the petitioner's fears of mischievous defendants only materializes in claims for equitable relief. And then they expressed skepticism that there would be, that defendants' changes in conduct would moot the case in these types of situations. But bid protests, they do moot the case. That's the court has held. They won't, they won't continue to hold, entertain a case after the corrective action has been taken. And the Palmetto case addressed that issue and said that where the corrective action is taken after resolution of the merits, then the corrective action is best described as involuntary. If the government had taken corrective action before the resolution of merits, it could be described as voluntary. That was the Palmetto court's, I think, attempt to try to differentiate the situation where a case is going to be dismissed as moot and equitable relief, which the buck hand didn't said, well, we don't think that's going to happen. I would also note that if the court finds that Duluth was not the prevailing party, it, doing so, will promote judicial and procurement inefficiency. In both this case and universal fidelity, the court was trying to do the government a favor by giving them early notice of how it was ruling on the merits, rather than having to wait several weeks to, oh, I see my time is up, Your Honor. You can finish your thought. Thank you, Your Honor. Rather than giving them time to wait several weeks for an opinion. The government has a strong interest, as well as the public, in advancing a re-procurement when the procurement itself was done wrong. And if the court is unable to make rulings from the bench like it did in this case, and needs to basically hold off to write a written opinion, it's going to push re-procurements back in the future, chill the court from making such statements in fear that will preclude clients like my own from obtaining fees. Thank you, Your Honor. Thank you, counsel. Ms. Herdot-Cock has almost three minutes for rebuttal if you need it. Thank you, Your Honor. Just several brief points. Let me tell you what disturbs me about your argument. Specifically, the mootness discussion. That is, what you're saying is that the government can take a completely frivolous position and wait until the court has taken the matter under submission and is in the process of issuing its opinion. And then act to negate the jurisdiction of the court. And it strikes me that under that circumstance, there is a substantial derogation to the meaning of the aegis statute. Respectfully, Your Honor, I don't believe in this circumstance, certainly. There was any- I'm not saying this circumstance. I'm taking your argument to its logical conclusion. You are the government. To its logical conclusion, because aegis must be strictly construed, there must be some court-ordered relief. The government, in other words, must have some idea of where the line is drawn for when it can, for instance, take corrective action or enter into a settlement and when the court has actually ruled. And without, for example, further guidance from this court in determining whether what statements, for instance, here from the bench could be considered or could not be considered to be a ruling, then the government won't know if it is, in fact, running afoul of anything. You would agree that the court could orally direct the entry of judgment, rule from the bench, and orally direct the entry of judgment, and then that would be it, you know?  Yes, and in cases where there is an oral decision, then following that decision, there is a docket entry memorializing such a fact. Several brief points to Deleu's arguments. First, this court needs not adopt a new standard, as is encouraged by Deleu. The Palmetto case is readily distinguishable. There was a partial grant of summary judgment, which could have been subject to an interlocutory appeal, but also the government in that case indicated it would not appeal and asserted that it would take corrective action and requested that the court hold open the record for it. None of these things happened here. Further, the Palmetto test that is encouraged by Deleu is not used by any other circuit, including the Seventh Circuit. Zesser v. Keith, which we cited in our yellow brief, discussed that the trial court's grant of partial summary judgment in that case did not direct the defendants to do or refrain from doing anything. That is exactly what happened here. The trial court did not force the government to take any action. And similarly, Parham v. Hannon test that Deleu urges, that involves a judgment capable of enforcement, which is not the case here. Are there no further questions? Thank you, counsel. We'll take the case under advisement. All rise.